**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CLAUDIA DE LA JARA,

Plaintiff,

v. Case No. 8:25-cv-1801-JRK

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.
_________________________________/

# OPINION AND ORDER[1]

## I. Status

Claudia De La Jara ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of hypoesthesia, migraine headaches, facial pain, post-COVID syndrome, fibromyalgia, a back injury, and chronic pain that radiates throughout her body. Transcript of

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed September 12, 2025, at 58, 67, 78, 87, 339.

On January 4, 2022, Plaintiff protectively filed applications for DIB and SSI, alleging a disability onset date of May 25, 2021. Tr. at 235-36 (DIB).[2] The applications were denied initially, Tr. at 56, 67-75, 108-11 (DIB); Tr. at 57, 58-66, 118-21 (SSI), and upon reconsideration, Tr. at 77, 78-86, 129-31 (DIB); Tr. at 76, 87-95, 137-39 (SSI).[3]

On August 14, 2024, an Administrative Law Judge ("ALJ") held a hearing, during which she heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE").[4] Tr. at 36-55. On September 19, 2024, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 10-28.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council and submitted a brief authored by her lawyer. Tr. at 4-5 (Appeals Council exhibit list and order), 227-31 (request for review, cover letter, and brief). On May 13, 2025, the Appeals Council denied Plaintiff's request for

---

[2] The DIB application was actually completed on January 5, 2022. See Tr. at 235. The SSI application was not located in the administrative transcript. The protective filing date for both the applications is listed elsewhere in the administrative transcript as January 4, 2022. Tr. at 67, 78 (DIB), 58, 87 (SSI).

[3] Some of these documents are duplicated in the administrative transcript. Citations are to the first time a document appears.

[4] The hearing was held via videoconference, with Plaintiff's consent. Tr. at 38, 222.

review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On July 14, 2025, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), through counsel, seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues "[t]he ALJ erred by failing to account for the 'total limiting effects' of Plaintiff's well documented migraine headaches; in particular, her analysis avoids altogether their primary effect, known to anyone who has ever had a bad headache—that during them she must absent herself from activities until the worse part of her headaches subsides." Plaintiff's Brief – Social Security (Doc. No. 15; "Pl.'s Br."), filed November 13, 2025, at 1 (emphasis omitted); see id. at 4-19. On January 14, 2026, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing Plaintiff's argument. Then, on January 27, 2026, Plaintiff's Reply Brief – Social Security (Doc. No. 20; "Reply") was filed. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Regulations, determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 13-27. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since May 25, 2021, the alleged onset date." Tr. at 13 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following

---

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

severe impairments: degenerative disc disease, cervical, thoracic, and lumbar spine; cervical radiculopathy, spondylosis of the lumbosacral region; osteoarthritis, left elbow; fibromyalgia; [and] migraine headaches." Tr. at 13 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 14 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) with the following limitations: Frequently climb ramps/stairs, balance, stoop, kneel, crouch, and never crawl. Never climb ladders, ropes, or scaffolds. Frequently reach, handle, finger, and feel. Avoid concentrated exposure to atmospheric conditions, noise, vibrations, and hazards. Understand, remember, and carry out simple instructions. Maintain attention, concentration, and pace for two (2) hour increments in an eight-hour workday. Changes in the workplace are occasional and gradually introduced. Frequent interaction with co-workers, supervisors, and the general public.

Tr. at 15.

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff "is unable to perform any past relevant work" as a "bartender." Tr. at 26 (citation omitted). The ALJ then proceeded to the fifth and final step of the sequential inquiry. Tr. at 26-27. After considering Plaintiff's age ("44 years old . . . on the alleged disability onset date"), education ("at least a high school

education"), work experience, and RFC, the ALJ relied on the VE's testimony and found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 26 (emphasis and citation omitted), such as "table attendant," "garment sorter," and "marker." Tr. at 27 (some emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from May 25, 2021, through the date of th[e D]ecision." Tr. at 27 (emphasis and citation omitted).

## III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to

reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff argues the ALJ erred in "failing to account for the 'total limiting effects' of [her] well documented migraine headaches." Pl.'s Br. at 1 (emphasis omitted); see id. at 4-19; Reply at 1-6. According to Plaintiff, the ALJ provided a "conclusory, inapt, and highly selective analysis" that neglected to consider the fact that Plaintiff "must absent herself from activities during" headaches. Pl.'s Br. at 13 (emphasis omitted). Plaintiff also contests the ALJ's "conclusory" and "highly selective" finding that her headaches did not equal Listing 11.02. Id. at 16 (emphasis omitted). Responding, Defendant asserts that "the ALJ fully considered the impact of "Plaintiff's migraine headaches on her functioning." Def.'s Mem. at 6.[6]

[6] Inexplicably, Defendant asserts that Plaintiff has "waived" any argument regarding step three. Def.'s Mem. at 5 n.1. In support, Defendant contends that Plaintiff "references the ALJ's step 3 finding . . . but does not challenge it." Id. To the contrary, Plaintiff

(Continued…)

At step three, the burden rests on the claimant to prove the existence of a Listing-level impairment. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). Mere diagnosis of a listed impairment is not sufficient. See, e.g., id.; see also Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002). "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson, 284 F.3d at 1224 (internal quotations and citations omitted). "To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings." Id. (internal quotations and citations omitted).

There is no Listing that applies directly to migraine headaches, but the Administration "may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing." Social

---

has an entire subsection of her brief dedicated to the argument that "The ALJ's step 3 finding is conclusory and based on highly selective references to the record." Pl.'s Br. at 16 (emphasis omitted). She cites the ALJ's findings, the record, and case law to support her argument. Id. at 16-17. Complicating matters, Plaintiff in the Reply does not address Defendant's contention that she has waived the step three argument. See Reply at 1-6. Nevertheless, the undersigned finds Plaintiff did not waive this argument.

The only defense of the ALJ's step three findings by Defendant: "Plaintiff has made no effort to show that she actually equaled listing § 11.02"; and "her attorney did not allege that Plaintiff equaled the listing at the hearing or in any pre- or post-hearing briefing." Def.'s Mem. at 5 n.1. To the contrary on the first point, Plaintiff did make some effort. She indicates that "even the ALJ's summary of the record documents headache frequency between 6-7 per month and 15 per month . . . a fact avoided by the ALJ's conclusory finding," Pl.'s Br. at 16, and one of the considerations of Listing 11.02. And, although her counsel did not explicitly argue any listings during the hearing, he did explicitly say he would be addressing "migraines" during his examination of Plaintiff. Tr. at 40.

Security Ruling (SSR) 19-4p, 2019 WL 4169635, *7. Listing 11.02 (epilepsy) is the most analogous listed impairment. See id. SSR 19-4p explains, "While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures) . . . ." Id.

Paragraph B of Listing 11.02 requires "dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. SSR 19-4p, at *7; 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02. Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control, and blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00H1b. "To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, [the Administration] consider[s]: A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated

with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations)." SSR 19-4P, at *7.

Paragraph D of Listing 11.02 "requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning." SSR 19-4p, at *7; 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02. "To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in [Paragraph D, the Administration] consider[s] the same factors [it] consider[s] for [Paragraph B]," along with "whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." SSR 19-4p, at *7.

If an individual's "primary headache disorder, alone or in combination with another impairment(s), does not medically equal a listing at step three of the sequential evaluation process, [the Administration] assess[es] the person's [RFC]." Id. at *7. In so doing, the Administration "consider[s] the extent to which the person's impairment-related symptoms are consistent with the

evidence in the record." Id. at *8. "Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC." Id.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)); see also Malak v. Comm'r of Soc. Sec., 131 F.4th 1280, 1287 (11th Cir. 2025). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

The Regulations provide that an ALJ "will" consider the following factors related to symptoms such as pain:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other

> factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii); see Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1277 (11th Cir. 2024). The factors must be considered "in relation to other evidence in the record and whether the claimant's statements conflict with other evidence." Raper, 89 F.4th at 1277 (citation omitted); see 20 C.F.R. § 404.1529(c)(4). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Malak, 131 F.4th at 1287; Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and "is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," SSR 96-8P, 1996 WL 374184 at *3. It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(1). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v.

Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, Plaintiff testified she has had migraines for five years and, at the time of the hearing, she was getting Botox injections every three months, with "Nortec in between for any migraine" that still happened despite Botox. Tr. at 47. The migraines were "better" with this treatment, although it does not always work, and she never knows when she will get them. Tr. at 47. With the Botox treatment, Plaintiff still gets two to three migraines per week. Tr. at 47. When she does get one, she needs to be in dark and "noise bothers" her. Tr. at 47; see also Tr. at 390-92 (headache questionnaire)

The ALJ at step two found Plaintiff's migraines to be a severe impairment. Tr. at 13. At step three, the ALJ specifically considered Listing 11.02 and SSR 19-4p. Tr. at 14-15. The ALJ found "[t]he medical evidence of record . . . does not show that [Plaintiff] experienced migraine headaches at listing-level frequency so as to equal listing 11.02." Tr. at 15 (citations omitted). Overall, the ALJ determined that none of Plaintiff's impairments, considered singularly or in combination, meet or equal a listing. Tr. at 14.

The ALJ's overall step three finding is supported by substantial evidence. Contrary to the ALJ's frequency determination, Plaintiff argues that she experienced migraines at the frequency contemplated by Listing 11.02, Pl.'s Br. at 16-17, but she makes no other significant effort to show that she equaled this listing. The record does not support equaling the listing, which even by the SSA's estimation in SSR 19-4p, is "uncommon." The ALJ did not commit reversible error at step three.

The ALJ, in determining Plaintiff's RFC, set out in great detail the evidence pertaining to Plaintiff's migraines. Tr. at 16-24. The ALJ recognized Plaintiff's testimony about them, her treatment modalities and medications, a few emergency room visits over time, and general improvement with Botox injections. Tr. at 16-22. At the end of the day, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," Tr. at 17.

Factually, the record is compelling as it relates to Plaintiff's well-documented migraines and numerous treatment modalities. <u>See</u> Tr. at 447-1300. But, the ALJ considered the evidence in great detail and ultimately made findings that are supported by substantial evidence. In finding Plaintiff's migraines are not as severe as she alleges *as they related to her ability to*

*perform job-related functions*, and in later assessing the RFC, the ALJ specifically accounted for the documented migraines by limiting her to no concentrated exposure to atmospheric conditions, and occasional and gradually introduced workplace changes. See Tr. at 23-24, 15. For this Court to come to any other conclusion would be to impermissibly reweigh the evidence.

## V. Conclusion

The ALJ's Decision is supported by substantial evidence. In light of the foregoing, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 29, 2026.

James R. Klindt
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record